IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NELLY V. LEAP,                            06-CV-1593-BR

       Plaintiff,

                            OPINION AND ORDER

v.

SAMUEL BODMAN, Secretary U.S.
Department of Energy,

       Defendant.


**GLENN N. SOLOMON**
2125 S.W. Fourth Avenue
Suite 600
Portland, OR 97201
(503) 241-3508

       Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

       Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion for Summary Judgment (#18).  For the reasons that follow, the Court **GRANTS** Defendant's Motion.

<u>BACKGROUND</u>

Plaintiff is from Bulgaria.  Plaintiff received an engineering degree in Bulgaria and a Bachelor of Science degree in engineering from Portland State University.  On February 23, 1992, Plaintiff was hired as an electrical engineer with the Bonneville Power Administration (BPA), an agency of the United States Department of Energy.  When Plaintiff was hired as an electrical engineer, the position description was the same as the description for the position of mechanical engineer.

The BPA hired Plaintiff at a GS-7 grade.  Her position was rated as GS-7/9/11.  On March 21, 1993, Plaintiff was promoted "noncompetitively" to GS-9.  On March 20, 1994, Plaintiff was promoted noncompetitively to GS-11, the highest grade for her position.

At some point in the late 1990s, the BPA reclassified the position of electrical engineer to allow a maximum grade of GS-12.  At that point, Plaintiff's position allowed for promotion to GS-12 without a competitive process, but Plaintiff had to "demonstrate performance that justified such a promotion."  In

1998 the BPA redefined the descriptions of the electrical engineer and mechanical engineer positions to reflect different job duties and skills.

From 1997 through 2000, Victoria English was Plaintiff's "first-level performance and conduct supervisor" in BPA's "Engineering Services Department of Energy Efficiency." In 1999 Plaintiff sought a promotion to GS-12. According to Defendant, English did not believe Plaintiff was adequately performing the requirements of the electrical engineering position at the GS-12 level, and English, therefore, did not promote her.

English retired in 2000, and Thomas C. Foeller became Plaintiff's first-level performance-and-conduct supervisor. Although Foeller supervised numerous mechanical engineers, Plaintiff was the only electrical engineer in his Energy Efficiency team.

In 2000 and 2002, Plaintiff petitioned for a promotion to GS-12. Because Foeller is not an electrical or mechanical engineer, he solicited opinions from engineers and other Energy Efficiency department staff with whom Plaintiff had worked before he made his decisions regarding Plaintiff's requests for promotion. According to Defendant, Foeller did not believe Plaintiff was performing the electrical engineering position at the GS-12 level in either 2000 or 2002 based on the opinions of engineers qualified to evaluate Plaintiff's engineering ability

and on his own analysis.  Foeller, therefore, did not recommend
Plaintiff for promotion.

In Spring 2003, Foeller asked Donald Fay, a GS-13 electrical
engineer with the BPA, to review a portfolio of Plaintiff's work
so Foeller could determine whether Plaintiff's electrical
engineering work was at the GS-12 level at that time.  Fay
informed Foeller that Plaintiff "had not taken the lead in any of
the projects represented in the portfolio [and], therefore [Fay]
was not able to say with any certainty that [Plaintiff] herself
had performed at the GS-12 level."

According to Defendant, Foeller assigned Plaintiff to BPA's
Non-Wires Solution Initiative in an effort to provide Plaintiff
with an opportunity to do work that would justify a promotion to
GS-12.  BPA created the Non-Wires Solution Initiative to
investigate and to develop "methodologies, tools and processes
for the study and possible acquisition of alternatives to the
traditional wired transmission system that BPA owned and operated
throughout the Pacific Northwest."  BPA staffed the Initiative
project with a combination of Energy Efficiency personnel and
Transmission Business Line personnel.  According to Defendant,
the hourly rates for the Initiative were "very high" because of
the professional expertise required for the project, and "it was
important to use their time very efficiently."  Ngan T. (David)
Le, a GS-14 electrical engineer, was the Team Lead on the

4  - OPINION AND ORDER

Initiative, and, accordingly, he provided Foeller with his assessment of Plaintiff's performance.  After working with Plaintiff, Le believed Plaintiff's presence on the team was not a benefit and, in fact, was slowing down the work of the group.  Le asked Foeller to remove Plaintiff from the Initiative twice in Spring 2003, but Foeller urged Le to be patient and to keep working with Plaintiff.  Finally, in late Summer 2003, Le insisted on removing Plaintiff from the Initiative because she was unacceptably slowing progress on the project.

On November 19, 2003, Plaintiff had an annual appraisal meeting with Foeller during which Foeller informed her that he was not going to recommend her for promotion to GS-12.  On November 20, 2003, Plaintiff met with BPA's Equal Employment Opportunity (EEO) Counselor and advised she believed she had been denied a promotion to GS-12 on the basis of her sex, age, national origin, and/or a mental disability.

On February 8, 2004, Plaintiff was promoted non-competitively to GS-12.  On April 1, 2004, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in which Plaintiff alleged the BPA had failed to promote her earlier on the basis of her national origin, sex, age, and/or mental disability.  As part of the EEOC investigation, Plaintiff identified the dates on which she believed she should have been promoted as January 2000 and March 2002.  In addition,

5  - OPINION AND ORDER

Plaintiff's counsel sent a letter dated June 25, 2004, to the EEOC investigator in which counsel identified January 22, 2000, and March 22, 2002, as the dates on which Plaintiff believed she should have been promoted.

On August 1, 2006, an administrative law judge (ALJ) issued a decision with respect to Plaintiff's EEOC claims in which the ALJ concluded Plaintiff did not establish her claims of disparate treatment based on national origin, sex, age, or disability.

On November 7, 2006, Plaintiff filed a Complaint in this Court in which she alleges the BPA discriminated against her on the basis of her national origin and age "in violation of federal law"[1] when she was not promoted from 2000 through February 2004.

On November 30, 2007, Defendant filed a Motion for Summary Judgment on the grounds that (1) Plaintiff failed to exhaust her administrative remedies for all but a few months of the applicable period, (2) Plaintiff has not established a *prima facie* case of disparate treatment, and (3) Plaintiff has not established Defendant's reason for failing to promote her before February 2004 is pretextual.

---

[1] Although Plaintiff did not identify the specific federal law under which she brings her claims, Plaintiff's Response to Defendant's Motion suggests she intended to bring her claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*.

6  - OPINION AND ORDER

**STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


## DISCUSSION

In her complaint filed with the EEOC and in her Response to Defendant's Motion for Summary Judgment, Plaintiff asserted Defendant discriminated against her on the basis of her national origin and age when he failed to promote her in January 2000, March 2002, and November 2003.

Defendant moves for summary judgment on the grounds that (1) Plaintiff did not exhaust her administrative remedies as to the portion of her claims that occurred more than 45 days before Plaintiff met with Defendant's EEO Counselor and (2) Plaintiff has not established claims against Defendant for disparate treatment based on national origin and age.

I.   **Plaintiff did not exhaust the portion of her claims that occurred more than 45 days before Plaintiff met with Defendant's EEO Counselor pursuant to 29 C.F.R. § 1614.105(a)(1).**

Defendant contends Plaintiff did not exhaust her administrative remedies under 29 C.F.R. § 1614.105(a)(1) with respect to the portion of Plaintiff's claims based on Defendant's alleged discrimination that occurred more than 45 days before Plaintiff met with Defendant's EEO Counselor; *i.e.*, 45 days before November 20, 2003.

Under federal regulations promulgated by the EEOC, "federal employees complaining of discrimination by a governmental agency 'must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter.'" *Lyons*, 307 F.3d at 1105 (citing 29 C.F.R. § 1614.105(a)).  Federal employees also "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  "Although it does not carry the full weight of statutory authority, failure to comply with this regulation has been held to be fatal to a federal employee's discrimination claim." *Lyons*, 307 F.3d at 1105.

As noted, Plaintiff contends Defendant failed to promote her to GS-12 from 2000 through February 2004 based on her age and national origin.  Plaintiff, however, did not formally contact Defendant's EEO Counselor about Defendant's failure to promote

her until November 20, 2003.  According to Defendant, therefore, this Court lacks jurisdiction over Plaintiff's claims based on Defendant's alleged discrimination that occurred more than 45 days before November 20, 2003.

Plaintiff, however, contends the EEOC views the denial of a "career-ladder" promotion, such as the promotion at issue here, as a continuing violation (*i.e.*, each day that Plaintiff was not promoted constituted a new violation), and, therefore, Plaintiff's claims are not barred by § 1614.105(a)(1).  Plaintiff does not cite any cases to support her position nor could this Court find any case in the Ninth Circuit that addresses whether denial of a career-ladder promotion is a continuing violation for purposes of the exhaustion requirement of § 1614.105(a)(1).  Courts in other circuits, however, have rejected the EEOC's position; concluded the failure to grant a career-ladder promotion is a discrete act; and, accordingly, held the continuing violation doctrine is inapplicable.  For example, in *Genevie v. Jackson* the plaintiff was denied a career-ladder promotion several times by the Department of Housing and Urban Development (HUD).  No. 05-1733, 2008 WL 793885 (W.D. Pa. Mar. 24, 2008).  On August 22, 2002, the plaintiff contacted HUD's EEO Counselor; complained she had been denied promotion on the basis of her sex; and requested a retroactive promotion as of July 1, 2001.  *Id.*, at *5.  The plaintiff ultimately filed an action

alleging HUD violated Title VII when it failed to promote her.
Relying on *Morgan* and *Ledbetter*, the court concluded the
continuing violation doctrine did not apply to the plaintiff's
claim and found the plaintiff failed to timely exhaust her claim:

> While it is true, as plaintiff argues, that
> defendant continued to deny her a promotion
> to GS-12 from July 24, 2001 until October 6,
> 2002, when plaintiff was promoted to GS-12,
> the discriminatory act giving rise to her
> claim occurred on the day that it first
> happened, thereby commencing the 45-day
> period for her to contact an EEO counselor.
> To find otherwise would make the 45-day time
> limit contained in 29 C.F.R. § 1614.105
> meaningless.

*Id.*, at *8.  Similarly, in *Arnold v. Newsome*, the court rejected
the plaintiff's argument that the Commodities Futures Trading
Commission's failure to grant her career-ladder promotions were
continuing violations and, therefore, not barred by the 45-day
time limit in § 1614.105(a)(1).  No. 02 C 8696, 2005 WL 994454,
at *8 (N.D. Ill. Mar. 25, 2005).  Relying on *Morgan*, the court
reasoned "[b]ecause the discriminatory acts identified by [the
plaintiff] . . . are discrete acts, [the plaintiff's] claims that
she should have been promoted at any time prior to January 30,
2000 are time-barred."  *Id.*

     The Court finds the reasoning in *Genevie* and *Arnold* is
persuasive.  Here the discriminatory acts identified by Plaintiff
(*i.e.*, Defendant's failure to promote Plaintiff to GS-12) are
discrete acts.  This Court concludes, therefore, the portion of

Plaintiff's claims that occurred more than 45 days before Plaintiff met with Defendant's EEO Counselor are time-barred by § 1614.105(a)(1).

**II. Plaintiff did not exhaust her administrative remedies under Title VII and the ADEA as to the portion of her claims based on Defendant's alleged discrimination that occurred more than 180 days before Plaintiff filed a complaint with the EEOC.**

To establish federal subject-matter jurisdiction, a plaintiff is required to exhaust her administrative remedies before bringing a claim under Title VII. *Lyons v. England, Sec. of the Navy*, 307 F.3d 1092, 1103 (9th Cir. 2002). Title VII contains two time limitations within which a plaintiff must file an administrative charge with the EEOC: (1) within 180 days of the last act of discrimination or (2) within 300 days from the last act of discrimination if a plaintiff first commenced proceedings with a "[s]tate or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e)(1).

The ADEA contains a similar exhaustion requirement. With respect to claims by federal employees, the ADEA requires employees to give "notice [to the EEOC] . . . within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d).

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court set out the exhaustion requirements:

12 - OPINION AND ORDER

> Discrete acts such as termination, failure to
> promote, denial of transfer, or refusal to hire
> are easy to identify.  Each incident of
> discrimination and each retaliatory adverse
> employment decision constitutes a separate
> actionable "unlawful employment practice.

536 U.S. 101, 114 (2002).  In addition, "[a] discrete retaliatory

or discriminatory act occurred on the day that it happened.  A

party, therefore, must file a charge within . . . 180 . . . days

of the date of the act or lose the ability to recover for it."

*Id*. at 110.  Finally, "discrete acts that fall within the

statutory . . . period do not make timely acts that fall outside

the . . . period." *Id*. at 112.  *See also Ledbetter v. Goodyear

Tire & Rubber Co.*, 127 S. Ct. 2162, 2169 (2007)(Court rejected

the plaintiff's argument that the defendant's "conduct during the

charging period gave present effect to discriminatory conduct

outside of that period.").

Here Plaintiff did not commence proceedings with Oregon's

Bureau of Labor and Industries (BOLI), and, therefore, she was

required to file an administrative charge with the EEOC as to

her claim of discrimination within 180 days of Defendant's

last alleged act of discrimination.  Plaintiff filed her

administrative charge with the EEOC on April 1, 2004, which was

not within 180 days of Defendant's alleged unlawful failure to

promote her in January 2000 or March 2002.  Plaintiff's claims

for discrimination based on Defendant's failure to promote her in

January 2000 and March 2002, therefore, are untimely under both

13 - OPINION AND ORDER

Title VII and the ADEA.  In addition, Plaintiff's failure to file
an administrative complaint with the EEOC until April 1, 2004,
renders untimely the portion of Plaintiff's claims that occurred
more than 180 days before Plaintiff filed her administrative
complaint with the EEOC.  *See Ledbetter*, 127 S. Ct. at 2168
("[The defendant] was entitled to treat [the plaintiff's
termination] as lawful after [the plaintiff] failed to file a
charge of discrimination within the 90 days then allowed by
[statute].  A discriminatory act which is not made the basis for
a timely charge . . . is merely an unfortunate event in history
which has no present legal consequences.").

The Court, therefore, does not have subject-matter
jurisdiction as to the portion of Plaintiff's claims based on
Defendant's alleged discrimination against her that occurred more
than 180 days before Plaintiff filed her administrative complaint
with the EEOC.

**III. Plaintiff's Claims for Disparate Treatment**

The court has concluded Plaintiff's claims based on
Defendant's alleged discrimination that occurred more than 45
days before she met with Defendant's EEO Counselor and more than
180 days before she filed her administrative complaint with the
EEOC are time-barred.  Even if portions of Plaintiff's claims
were not time-barred, the Court concludes for the following
reasons that Plaintiff has not established a genuine issue of

14 - OPINION AND ORDER

material fact exists as to any portion of her disparate treatment claims.

"Under Title VII, an individual suffers disparate treatment 'when he or she is singled out and treated less favorably than others similarly situated on account of [national origin].'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)). Similarly, under the ADEA "disparate treatment is demonstrated when the employer simply treats some people less favorably than others because of their [age]." *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 811 (9th Cir. 2004)(quotation omitted). "Failure to promote is a common manifestation of disparate treatment." *McGinest*, 360 F.3d at 1122.

"Disparate treatment claims must proceed along the lines of the praxis laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny."[2] *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004). The *McDonnell Douglas* analysis requires a plaintiff first to establish a *prima facie* case of discrimination. Although

> [the] specific method for appropriately
> establishing a prima *facie case* will vary

---

[2] The analysis of disparate treatment claims is the same under Title VII and the ADEA. *See, e.g., Enlow*, 389 F.3d at 811 (setting out the same burden-shifting analysis under the ADEA as required in Title VII cases).

> depending on differing factual situations. . . .
> In general, a plaintiff must present evidence of
> actions taken by the employer from which one can
> infer, if such actions remain unexplained, that it
> is more likely than not that such action was based
> upon race or another impermissible criterion.

*Id.* (quotations omitted).  "'The requisite degree of proof

necessary to establish a *prima facie* case for Title VII . . .

claims on summary judgment is minimal and does not even need to

rise to the level of a preponderance of the evidence.'"  *Davis v.*

*Team Elec. Co.*, No. 05-35877, 2008 WL 819885, at *5 (9th Cir.

Mar. 28, 2008)(quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885,

889 (9th Cir. 1994)).

When a plaintiff establishes a *prima facie* case of

discrimination, the burden shifts to the defendant "to produce

some evidence demonstrating a legitimate, nondiscriminatory

reason for the employee's termination."  *Bodett*, 366 F.3d at 743

(citing *McDonnell Douglas*, 411 U.S. at 802).  If a defendant

produces sufficient evidence of a legitimate, nondiscriminatory

reason, "any presumption that the defendant discriminated 'drops

from the case,' and the plaintiff must then show that the

defendant's alleged reason for termination was merely a pretext

for discrimination."  *Id.* (quoting *St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 507-08 (1993)).  "The burden of persuasion,

as opposed to production, however, remains with the plaintiff at

all times."  *Id.*

16 - OPINION AND ORDER

A.    Plaintiff's *Prima Facie* Case

To establish a *prima facie* case that Defendant discriminated against Plaintiff by failing to promote her, Plaintiff must establish (1) she is a member of a protected class, (2) she applied for and was qualified for the position sought, (3) Defendant rejected her for that position, and (4) similarly situated employees outside of Plaintiff's protected class were treated more favorably.  *See McGinest*, 360 F.3d at 1122.  *See also McDonnell Douglas*, 411 U.S. at 802.

1.    **Plaintiff has not established a *prima facie* case that Defendant treated similarly situated employees outside of Plaintiff's protected class of individuals over 40 more favorably in violation of the ADEA.**

The parties do not dispute Plaintiff is a member of a protected class due to her age.  Defendant, however, contends Plaintiff has not established any similarly situated employees outside of Plaintiff's protected class were treated more favorably than Plaintiff or that Plaintiff was qualified for the GS-12 position before her promotion in February 2004.

To establish her claim of discrimination based on age, Plaintiff "must demonstrate, at the least, that [she is] similarly situated . . . in all material respects" to the employees allegedly receiving more favorable treatment.  *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

Plaintiff points to the mechanical engineers in

her department and notes they all received promotions to GS-12 or above "in the '90s."  To support her assertion, Plaintiff relies on a chart that shows the GS grades and dates of promotion of the engineers in her department.  Unfortunately, Plaintiff's exhibit cuts off all but the first number of the years in which these individuals were promoted.  Nevertheless, the Court can deduce from the first number that seven mechanical engineers were promoted to GS-12 or above at some point in the 1990s.  The record, however, does not reflect any of the ages of these engineers.  Plaintiff testifies in her Declaration that Craig Ciranny is "younger than [she] is," but she does not identify his age.

The ADEA prohibits employers from "'fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Enlow*, 389 F.3d at 811 (quoting 29 U.S.C. § 623(a)(1)). Plaintiff, however, has not established Ciranny or any other engineer promoted to GS-12 was under 40 when he was promoted. Plaintiff, therefore, has not shown any individual outside of her protected class was treated more favorably, which is required to establish a *prima facie* case with respect to her ADEA claim.

On this record, therefore, the Court grants

Defendant's Motion for Summary Judgment as to Plaintiff's claim under the ADEA.

>    **2.    Plaintiff has established a *prima facie* case that Defendant treated similarly situated employees outside of her protected class of individuals of Bulgarian national origin more favorably.**

The parties do not dispute Plaintiff is a member of a protected class due to her national origin.  Defendant, however, contends Plaintiff has not established any similarly situated employees outside of Plaintiff's protected class were treated more favorably than Plaintiff or that Plaintiff was qualified for the GS-12 position before her promotion in February 2004.

As noted, Plaintiff points to the mechanical engineers in her department who were promoted to GS-12 or above while Plaintiff was not promoted.  The record reflects none of these mechanical engineers were Bulgarian.  Defendant contends, however, these individuals are not similarly situated employees because the position of mechanical engineer is not the same as the position of electrical engineer.

In *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), the Ninth Circuit cited with approval the Second Circuit's opinion in *McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001), in which the court found:

>        [I]n those cases in which a plaintiff seeks
>        to establish her minimal *prima facie* case by

> pointing to disparate treatment of a
> similarly situated employee, it is sufficient
> that the employee to whom plaintiff points be
> similarly situated in all material respects.
> In other words, where a plaintiff seeks to
> establish the minimal *prima facie* case by
> making reference to the disparate treatment
> of other employees, those employees must have
> a situation sufficiently similar to
> plaintiff's to support at least a minimal
> inference that the difference of treatment
> may be attributable to discrimination.

263 F.3d at 53-54.  The *McGuinness* court concluded the plaintiff

in that case had established this element of her *prima facie* case

because

> [i]n the broadest outlines, plaintiff has
> established that she and Mitchell held
> positions of roughly equivalent rank (both in
> the Executive Cabinet), that she and Mitchell
> were fired at roughly the same time, that the
> decisions with respect to the severance were
> both made at the highest levels of the
> company, and that Mitchell received
> considerably more money in severance.

*Id*. at 54.

Here even though the job descriptions for

electrical and mechanical engineer were revised in 1998 to

reflect different parameters, the mechanical and electrical

engineering positions are of roughly equivalent rank, decisions

regarding promotions for both positions were made at the same

level, both positions were supervised by English and Foeller, and

both positions operated under the same pay-grade system.  As

noted, "the requisite degree of proof necessary to establish a

*prima facie* case for Title VII . . . claims on summary judgment

20 - OPINION AND ORDER

is minimal."

In summary, the Court concludes on this record that Plaintiff has satisfied the minimal requisite degree of proof necessary to establish a *prima facie* case of disparate treatment for national origin under *Davis* and *Wallis* based on the fact that the mechanical engineers who were promoted were similarly situated to Plaintiff.  Accordingly, the Court denies Defendant's Motion for Summary Judgment to the extent that Defendant bases its Motion on the contention that Plaintiff has not identified similarly situated employees outside of her protected class of individuals of Bulgarian national origin that were treated more favorably than Plaintiff.

**B.    Defendant has produced sufficient evidence to establish a legitimate, nondiscriminatory reason for failing to promote Plaintiff before February 2004.**

Because Plaintiff has established a *prima facie* case of disparate treatment on the basis of her national origin as to the portion of her claim she timely exhausted, the burden shifts to Defendant to produce some evidence to demonstrate he had a legitimate, nondiscriminatory reason for not promoting Plaintiff before February 2004.  *Bodett*, 366 F.3d at 743.  Defendant contends it did not promote Plaintiff until February 2004 because Plaintiff was not qualified to perform the job of electrical engineer in a GS-12 capacity before that time.

To support his assertion, Defendant relies on the

21 - OPINION AND ORDER

Declaration of Thomas Foeller; Foeller's contemporaneous notes of his performance evaluations of Plaintiff; and the Declarations of Ngan (David) T. Le, Victoria English, and Donald Fay.

In his Declaration, Foeller testifies he noted during Plaintiff's 2000 performance evaluation that she had difficulty multi-tasking and he was concerned she did not have sufficient knowledge of safety practices.  Foeller testifies he "had no trouble rating [Plaintiff] a successful performer at the GS-11 level, . . . but [he] did not see her technical and other required skills being performed at a level that would justify promotion to GS-12."  Foeller Decl. ¶ 7.

With respect to Plaintiff's 2001 performance review, Foeller testifies he still had concerns about her inability to multi-task.  Foeller testifies he spoke with engineers who had worked with Plaintiff, and they informed him that Plaintiff's

> style of proceeding through a technical problem in a very academic, painstaking, step-by-step manner, needing to ask lots of questions along the way, was sometimes out of step with the setting in which her work was being done and caused some frustration among those who were also involved in the same process.

Foeller Decl. ¶ 9.  It was for these reasons that Foeller believed Plaintiff "was not yet working at the level that would have been required to promote her to GS-12."  Foeller notes "[t]his was not a reflection of her technical skills as an electrical engineer; it was a matter of her ability to apply

22 - OPINION AND ORDER

those skills in the setting required by the Energy Efficiency mission."

With respect to Plaintiff's 2002 and 2003 performance evaluations, Foeller testifies he had the same concerns as those noted in his 2000 and 2001 evaluations. Foeller's contemporaneous notes of Plaintiff's performance evaluations reflect Foeller was concerned about whether Plaintiff could work independently, her lack of familiarity with safety issues, her communication skills, and her difficulties with multi-tasking. Foeller's notes also reflect he was aware Plaintiff wanted to be promoted to GS-12, and he was working on various ways to assist her to achieve that goal.

In his notes, Foeller observed David Le asked Foeller in 2003 to remove Plaintiff from the Non-Wires Solution Initiative team because she was "impeding the progress of [the] project and frustrating other members of the team." David Le testified in his Declaration that he began acting as the "Team Lead" on the Energy Efficiency Non-Wires Solution Initiative in May 2003. Plaintiff was already part of the team. As noted, Le "came to believe [Plaintiff's] presence and involvement in [team] meetings was not a benefit and in fact, slowed the work of the group." Le Decl. ¶ 8. Le also testified Plaintiff had "a tendency to focus on minute, often unnecessary details of a matter," and she would on occasion return to comment on agenda

items from which the group as a whole had moved on.  Le stated
Plaintiff's "fixation with sometimes odd details impeded the
process [of the team] and made [the initiative] more expensive."
Le asked Foeller three times to remove Plaintiff from the team
because she was causing delays and problems.

        Donald Fay testifies in his Declaration that he was the
Team Lead on a project "in the 2000-2001 timeframe," and
Plaintiff was one of the members of the team at that time.
According to Fay, Plaintiff's role on the team "capitalized on
her strength, which . . . is working with discrete data to come
up with an answer to a particular question."  Fay testifies
Plaintiff was "very determined" in that area, but she was "not
nearly as strong . . . in other skills that are critical for any
member of an Energy Efficiency team . . . such as communicating
with the end-users, working within the team structure . . ., and
possession of over-all technical skills."  Fay Decl. ¶ 4.
Foeller asked Fay to review a portfolio of Plaintiff's work in
Spring 2003 because Fay is an electrical engineer and, therefore,
a good evaluator of Plaintiff's projects.  Fay examined the
portfolio and opined:  "[A]lthough the projects as a whole were
complex and the work product of the team competent, [Plaintiff]
had not taken the lead in any of the projects represented in the
portfolio.  Therefore, I was not able to say with any certainty
that [Plaintiff] herself had performed at the GS- 12 level."  Fay

24 - OPINION AND ORDER

Decl. ¶ 6.

Victoria English testifies in her Declaration that when she started working with Plaintiff in 1997, Plaintiff had "problems following directions and producing useful work independently, and her supervisors and her peers . . . had problems figuring out what she was doing." English Decl. ¶ 5. English states Plaintiff "required lots of supervisory and peer attention and her work product was not very useable." English testifies Plaintiff's work had not risen to the level required for promotion to GS-12 in 2000 when English retired from the BPA because Plaintiff had not proven her ability to work independently or to take a lead role.

Finally, with respect to Plaintiff's 2004 promotion, Foeller testifies Plaintiff presented a technical paper at a "significant power quality conference" in June 2003 that represented a "significant" step by Plaintiff towards GS-12 level performance. In addition, Foeller assigned Plaintiff to be the customer-service engineer for two small utilities in 2004, and she did that job well. Foeller, therefore, believed Plaintiff was ready for a promotion to GS-12 in February 2004.

Accordingly, the Court concludes on this record that Defendant has produced sufficient evidence to establish a legitimate, nondiscriminatory reason for failing to promote Plaintiff before February 2004.

25 - OPINION AND ORDER

**C.  Plaintiff has not established Defendant's reason for failing to promote her before February 2004 was merely a pretext for discrimination based on her national origin.**

Because Defendant produced sufficient evidence of a legitimate, nondiscriminatory reason for not promoting Plaintiff until February 2004, "any presumption that the defendant discriminated drops from the case, and [Plaintiff] must [now] show [Defendant's] alleged reason for [failing to promote her] was merely a pretext for discrimination." *Bodett*, 366 F.3d at 743.

A plaintiff "may prove pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003)).  Here Plaintiff does not offer direct evidence of discrimination based on her national origin. Plaintiff, therefore, must establish Defendant's proffered explanation for refusing to promote Plaintiff before February 2004 is mere pretext "because it is internally inconsistent or otherwise not believable." *Noyes v. Kelly Serv.*, 488 F.3d 1163, 1170 (9th Cir. 2007)(quotation omitted).  When "the evidence of pretext is circumstantial, rather than direct, the plaintiff must present specific and substantial facts showing that there is a

26 - OPINION AND ORDER

genuine issue for trial." *Id*. (quotation omitted).

Plaintiff asserts she was qualified for the GS-12 promotion beginning in 2000 and relies on her assessment of her skills; the fact that she worked on projects with individuals who were GS-12 and higher; and a number of "On-The-Spot" awards, a Team award, and a Thank-You certificate that she received in 2001.

With respect to Plaintiff's belief that she was qualified for a GS-12 position from 2000-2004, the Ninth Circuit has held "an employee's own statement that [s]he was performing at a level equal to that of other employees is not enough to raise a genuine issue of material fact." *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002) (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)("[A]n employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact."). As for the awards received by Plaintiff when she was a GS-11, Defendant does not contend Plaintiff was performing her job inadequately at that level. Moreover, the awards do not establish Plaintiff had sufficient skills in the areas identified by Defendant as inadequate.

Plaintiff also asserts Foeller consulted with Jack Callahan when he was deciding whether Plaintiff was ready for promotion, and, according to Foeller's notes of the conversation,

Callahan said "there were cultural issues" with Plaintiff and that "she doesn't really fit." Plaintiff contends these comments can be interpreted as expressing prejudice against Plaintiff based on her national origin and that Callahan's prejudice affected the decision-making process. Foeller, however, testifies in his deposition that he interpreted Callahan's statements to mean Plaintiff's "style doesn't really fit in with most of the engineers working in energy efficiency." In addition, Foeller's contemporaneous notes include comments from other engineers who worked with Plaintiff and reported Plaintiff had problems with communication because she had trouble "getting to the point"; she needed to "get to the punch line without going into great engineering detail"; and she needed to work on "linear communication," learning how to put together presentations, and being "able to talk to [a] specific audience." The record, therefore, reflects several individuals informed Foeller that Plaintiff had problems with communicating that were unrelated to Plaintiff's national origin.

In addition, Callahan's comments are not the kinds of statements the Ninth Circuit has concluded establish discriminatory animus toward a protected class. For example, in *Dominguez-Curry v. Nevada Transportation Department*, the Ninth Circuit concluded a supervisor's statements were sufficient evidence of discrimination when the supervisor stated "he wished

he could get me to do [female employee's] jobs" and that "women have no place in construction."  424 F.3d 1027, 1038 (9th Cir. 2005).  Similarly, in *Godwin v. Hunt Wesson, Incorporated*, the Ninth Circuit concluded a manager's statement that he "did not want to deal with another female" was sufficient to establish discriminatory animus.  150 F.3d 1217 (9th Cir. 1998).  *See also Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (court concluded supervisor's reference to "a dumb Mexican" was sufficient to establish discriminatory animus).  Callahan's statement is significantly different from those made in *Dominguez-Curry, Godwin*, and *Cordova*.

Based on this record, the Court concludes Plaintiff has not produced evidence sufficient to establish a genuine issue of material fact exists as to whether Defendant's reason for failing to promote her before February 2004 was mere pretext.

Accordingly, the Court grants Defendant's Motion for Summary Judgment.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for

Summary Judgment (#18) and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 17th day of April, 2008.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge